ULMER v. THE PHŒNIX FIRE INSURANCE CO. OF BROOKLYN, N. Y.

1. INSURANCE.—THE ACT, 22 STAT., 113, providing for "valued" insurance policies, not prescribing any rule of evidence in regard thereto, nor any penalty against writing an "open" policy, is not prohibitive of "open" fire insurance policies.
2. IBID.—INSURABLE INTEREST.—A CONTRACTOR OR BUILDER who has contracted to build a house and furnish the material for a certain sum, has an insurable interest in the building and material on the premises during construction to the value thereof, even though he has been paid in instalments to nearly the contract price.

Before WATTS, J., Orangeburg, May, 1900. Reversed.

Action on insurance policy by B. D. Ulmer against the

Phœnix Fire Insurance Co., of Brooklyn, N. Y., A. F. Horger, Alice E. Inabinet and W. S. Kemmerlin. From judgment for plaintiff, he appeals.

*Messrs. Thos. F. Brantley* and *Wm. C. Wolfe,* for appellant, cite: *Amount of damages is a question for jury:* Hale of Dam., 227; 18 S. C., 115; 29 S. C., 381. *Plaintiff had an insurable interest in building and material:* 19 Ia., 364; 35 L. R. A., 667, and notes; 25 N. Y., 272; 97 N. C., 350; 2 Jno. J., 350; 81 Ala., 320; 43 L. R. A., 667; 34 App. Div., 128; 10 L. R. A., 684; 101 N. Y., 277; 149 Mass., 158; 135 Mass., 506; 19 N. Y., 401; 1 Hall, 84; 45 N. Y., 606. *Court should consider verbal requests to charge made immediately at close of charge:* 11 Ency. P. & P., 241-2; 24 S. C., 145; 27 S. C., 271; 38 S. C., 33.

*Messrs. Izlar Bros.,* contra, cite: *Policy of fire insurance as between the parties is purely a personal contract:* 2 Am. St. R., 219. *Contractor had insurable interest in building to extent of his interest:* 13 Ency., 2 ed., 164; 4 L. R. A., 160. *Policy is "open" policy:* 13 Ency., 2 ed., 102-3, 323. *Mrs. Inabinet not entitled to subrogation because she is ultimately liable for the debt:* 33 S. C., 324.

September 6, 1901. The opinion of the Court was delivered by

MR. JUSTICE JONES. The plaintiff appeals from a judgment for $82.92 in his favor in this action on a fire insurance policy issued by the defendant for $450. The questions raised by the exceptions are as to the proper construction of the policy and the extent of the insurable interest of the insured plaintiff. It appears from the evidence submitted in behalf of the plaintiff that on December 4, 1898, the plaintiff, Ulmer, entered into a written contract with one A. F. Horger, by which plaintiff as contractor agreed to build for Horger a dwelling house according to specifications, for which Horger agreed to pay $300 in weekly instalments, $50

to be held back until the completion of the house. A. E. Inabinet became surety for Horger on this contract, and as the work progressed paid or advanced to Ulmer, upon the request or order of Horger, sums aggregating $287.22. On the 4th day of March, 1899, while the building was being constructed, Ulmer procured the policy in question, by which the defendant, in consideration of the $1.35 premium, agreed to "insure B. D. Ulmer, contractor, for the term of thirty days from the 4th day of March, 1899, at noon, to the 4th day of April, 1899, at noon, against all direct loss or damages by fire, except as hereinafter provided, to an amount not exceeding $450, to the following described property, while located and described herein and not elsewhere, to wit: $450 on one story shingle roof building, now in course of construction and all building material to be used for same, lying adjacent to said building, situate in the town of Jamison, Orangeburg County, S. C." This was made subject to the three-fourth value clause attached to the policy. There was no slip attached, such as is usual since the act of February 28, 1896, fixing the value of the building and the amount of insurance. The policy contained the provisions usual in the "standard" policy, among which is the following: "This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and this company, or, if they differ, then by appraisers, as hereinafter provided; and the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of the loss have been received by this company, at their office in Atlanta, Ga., in accordance with the terms

of this policy." The building was totally destroyed by fire on the night of the 3d of April, 1899. At that time the building was not quite completed and had not been turned over to Horger. There was some testimony tending to show that certain extra work had been done on the building by agreement between Ulmer and Horger, reasonably worth $65. The verdict included this $65 for extra work, $12.73 balance due Ulmer on the original contract and $5.19 interest, as the extent of the loss under the policy.

Construing the policy, the Circuit Court instructed the jury as follows: "Now I will tell you what that contract of insurance is. The insurance company entered into a contract with the plaintiff for what? To indemnify and secure him against loss he might sustain by reason of the building which he had contracted to build, in case that building or any of the material on the premises which was to be used in the erection of that building should be destroyed, to a sum not exceeding the sum of $450. Now was the building destroyed by fire? And if so, the plaintiff then would be entitled to recover such damages as he has sustained by reason of the destruction of such property by fire, not to exceed the amount of $450. That policy does not mean that as soon as the house was destroyed by fire that the plaintiff was entitled to recover $450 from the insurance company, but meant that he was to recover that amount, if that was the damage done him by the fire. In other words, he was to recover just such injury as he had sustained by reason of the fire, whatever the injury amounted to, provided it didn't exceed the sum of $450. The insurance company guaranteed him against any loss to the extent of $450 which he might sustain by reason of the property being destroyed by fire, that is, the house in the course of erection, and the lumber on the ground adjacent thereto which was to be used in the construction of the house.'"

It is excepted that this construction is erroneous because contrary to the provisions of the act of 1896, 22 Stat., 113, and the argument is that the policy is what is known as a

"valued" policy and is not an "open" policy, and that upon a total loss the defendant company was liable for the whole $450. The statute provides: "That hereafter no fire insurance company, or individual writing fire insurance policies, doing business in this State, shall issue policies for more than the value to be stated in the policy, amount of the value of the property to be insured, the amount of insurance to be fixed by insurer and inserted at or before time of issuing said policies; and in case of total loss by fire the insured shall be entitled to recover the full amount of insurance and a proportionate amount in case of partial loss, &c." We have quoted as printed, and presume the meaning is that no fire insurance company shall issue policies for more than the value of the property to be insured, to be stated in the policy, the amount of insurance to be fixed by the insurer and insured, &c. The attempt of the statute no doubt was to secure "valued" instead of "open" policies of fire insurance on property other than chattel or personal property. The statute prescribes no penalty and contains no provision requiring that the amount named in the policy shall be construed to be the value of the property insured, or conclusive evidence of such value. The Circuit Court was, therefore, compelled to construe the contract according to its terms, and we do not think he erred in construing the policy to mean that the defendant was liable for the loss or damage by fire sustained by the insured not to exceed $450. This is manifest from the express language of the policy and the provisions showing how the amount of the loss is to be ascertained or estimated. The policy contains no words showing that the property was "worth" or "valued at" the amount stated as limiting the loss, and, on the contrary, shows that the intent of the parties was that proof should be offered as to the value of the property in case of loss. This shows that the policy is an "open" and not a "valued" policy, as defined in 13 Ency. of Law, 102, 103. This not being a policy in which the value of the property to be insured and the amount of the insurance

are *fixed* by the terms of the policy or by statutory construction, the provision of the statute, that "in case of total loss by fire the insured shall be entitled to recover the full amount of insurance," cannot apply.

In the matter of the plaintiff's insurable interest and loss, the Court instructed the jury: "Now if you conclude that the plaintiff in this case contracted with Horger to build his house for $300, and he went ahead doing his work and partially completed it, and had lumber there, and that he was paid $287.27 on that, and he was only to get $300 for it, then he would be interested in the house to the extent of what was still due on the contract. Whatever amount he had been paid on his contract; if he was to receive $300 on his contract and he had received that, the insurance company would not be liable for what he had been paid, but would be liable for any amount of money that was due him for labor performed and material on the ground, or material to be used in the erection of the building, or material actually furnished." Appellant excepts to this instruction because it "limited the plaintiff's recovery to the difference between the contract price, $365, and the amount advanced by the surety defendant, Inabinet, $287.27; whereas, as matter of law, the plaintiff was entitled, even before the act of 1896, to recover the amount of the policy, so that he would be able to either (a) repay the defendant, Inabinet, the amount advanced by her to him, or (b) to perform and discharge his contract fully by rebuilding the house for defendant, Horger; in other words, the right and insurable interest of plaintiff extended at least to a sufficient amount to protect his payment of the amount advanced by the defendant, Inabinet, as well as the difference between the amount thus advanced and the contract price, $365, or to rebuild the house according to his contract; but this instruction precluded this, and took these matters from the consideration of the jury." In May on Insurance, p. 144, it is stated: "Whoever may be fairly said to have a reasonable expectation of deriving pecuniary advantage from the

preservation of the subject matter of insurance, whether that advantage enures to him personally or as the representative of the rights or interest of another, has an insurable interest * * * or who will receive benefit from the continued existence of the property, whether they have or have not any title to, estate in, lien upon, or possession of it, have an insurable interest." In this State there are statutory provisions by which persons furnishing labor or material for the erection of a building may secure a lien on such building to secure payment of the amount due.    Sec. 2465, Rev. Stat.    Independent of any statutory lien, it would seem that contractors, builders and the like have insurable interests in the buildings, in the construction of which they furnish labor or material, whether the payments are to be in instalments or upon the completion of the work.    13 Ency. Law, 164, and cases cited.    It is not disputed in this appeal that plaintiff, as contractor, had an insurable interest in the building insured, at least to the extent provided for in the verdict.    If the extent of his insurable interest is limited by the amount of his lien on the building, or the amount he could have recovered of Horger upon the completion of the building, then unquestionably the charge and verdict must stand.    But, as it seems to us, plaintiff had a greater interest than that in the continued existence of the building.    By his contract with Horger he was bound to build and complete the dwelling house for $365, including the extras, and he has not been prevented from discharging this agreement by any fault of Horger, or by act of God or the public enemy, if even the two last named contingencies would, under all circumstances, excuse performance.    Assuming honesty of purpose on the part of Ulmer, it is very probable that the contingency which prevented and prevents full performance, is the very casualty by fire against which he sought protection by procuring the policy in question. Being bound by his contract to give Horger a completed building, which he has never done because of the destruction of the nearly completed house by fire, Ulmer's interest in

the continued existence of the building was not merely as a security for the amount to be due him on completion, but as a means by which he could discharge his own obligation to Horger. His insurable interest in the building would, therefore, be the value of the building at the time of the fire, and his "loss or damage" by the fire would necessarily be the same. The plaintiff's case is not altogether like the case of a mortgagee or mere lien holder, who insures the property upon which he holds the lien, as to whom it may be said that his insurable interest is limited by the amount due upon the lien debt. Plaintiff's case is more analogous to the case of a bailee or warehouseman charged with the custody and delivery of goods, who not only has a lien for his charges, but is also responsible for the delivery of the goods, or still more analogous to the case of a ship-builder, who contracts to build and deliver a ship. It can hardly be doubted that a bailee charged with the custody of property or a ship-builder contracting to build and deliver a ship, has an insurable interest to the extent of the value of the property, and not merely to the extent of the lien for charges, or the balance due upon the contract price. In the case of *Pelzer Mfg. Co.* v. *Sun Fire Office,* 36 S. C., 266, the Court, speaking by Chief Justice McIver, said: "It is well settled that a warehouseman has an insurable interest in property stored in his warehouse to indemnify himself against any liability which he may incur to his patrons by reason of his relation to them as warehouseman." So if the warehouseman's liability was to the extent of the value of the goods in his hands, his insurable interest therein would go to that extent. We see no sufficient reason why this principle should not extend to a builder or contractor while the building is being constructed for the purpose of being turned over after completion to the employer.

The case of *Commercial Fire Ins. Co.* v. *Capital City Ins. Co.,* 81 Ala., 320, 60 Am. Rep., 162, is much in point, the facts being very similar to those in the case at bar. In that case the Court decided that when a builder contracts to fur-

nish materials and build a house for another person at a stipulated price, payable in instalments as the work progresses, and takes out a policy of insurance on the house during its construction and it is destroyed by fire before completion, the loss is his, although he may have received partial payments by instalments, because of his liability to rebuild the house.     The case of *Foley* v. *Ins. Co.,* 152 N. Y., 131, decides that an owner has an insurable interest to the extent of its value in a building in process of construction at the time of the fire, under a contract requiring the delivery of the completed building within a specified time not yet expired, although the loss in the absence of insurance would fall on the contractor, and not on the owner.     In this case the owner has an insurable interest to the extent of the value of the building, for which he had not paid, because the building being annexed to the soil, title thereto passed to the owner.     The case, however, recognizes the principle that the loss of a building destroyed by fire while being constructed, under contract requiring delivery of the completed building, falls upon the contractor.     Under such circumstances, while the contractor in strict law would not be the owner of the building, still he has potentially the rights of the owner to indemnify himself against loss by reason of its destruction.     See note to the case cited above, 43 L. R. A., 664.     The conclusion we have reached is further strengthened or made manifest by the stipulations of the policy, which provides that the loss or damage shall be ascertained or estimated according to the actual cash value of the property insured, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality.     These stipulations show that the parties contemplated that the loss was to be measured with reference to the value of the building, and not with reference to the sum that might be due the insured upon the building contract.

This conclusion renders it unnecessary to consider the remaining exceptions.

The judgment of the Circuit Court is reversed and the case remanded for a new trial.