**GERHARD v. BOSTON INS. CO.**

No. 9626.

United States District Court
E. D. Pennsylvania.

July 13, 1951.

248

Henry T. Reath, Philadelphia, Pa., for plaintiff.

Horace Michener Schell Philadelphia, Pa., for defendant.

McGRANERY, District Judge.

At the conclusion of the trial the jury in the instant case returned a special verdict in the form of answers to the interrogatories which had been submitted to it by the court under Fed. Rules. Civ.Proc. rule 49(a), 28 U.S.C.

The plaintiff then moved for judgment on the special verdict, whereupon the defendant moved to set aside the special verdict, for a new trial and for judgment.

The within action had been inaugurated by the plaintiff's suit on an insurance

policy issued by the defendant and counter-signed n Philadelphia.

The policy is designated "Jewelry-Fur Floater" and covers a matched pearl necklace. It sets forth that the company insured the plaintiff for "the sum of five thousand dollars on jewelry and/or furs, as per schedule below * * *." The schedule consists of three columns. The first is titled: "Item No." and was filled in with the numeral "1". The second is titled: "Description of Articles Insured" and was filled in with description: "Genuine pearl necklace consisting of three strands of 107, 109 and 115 pearls each, including clasp of platinum with diamond chips."; and the third is titled: "Insured Value" and was filled in with the amount five thousand dollars.

No appraisal was required upon the issuance of this policy and the plaintiff was informed that none was required for any article valued under fifteen thousand dollars.

While this policy was still in effect the above-described pearl necklace held in the outstretched hand of the plaintiff for examination by her sister attracted the hungry eyes of a horse of somewhat eccentric taste. The animal viewed the necklace as an eatable delicacy and swiftly attacked it as if it were lumps of sugar. Speedily the plaintiff retrieved from the horse's mouth 262 of the pearls.

When the action on the policy came to trial the plaintiff contended that the policy was a valued contract of insurance and hence, that she was relieved of the necessity of proof of value or loss. The issue of whether it was, indeed, a "valued" contract was reserved by the court and the trial proceeded as in a suit on an "open" policy. The jury answered the interrogatories by a finding that the value of the necklace on the date of loss was five thousand dollars and by a finding that the salvaged value of the rescued pearls was five hundred dollars. On the resulting special verdict of four thousand five hundred dollars plaintiff has moved for judgment. In examining the entire record this court has sought in vain for competent evidence in support of the jury's finding that the necklace was worth five thousand dollars on the date of its loss.

■ It is true that the plaintiff's placing of this valuation on the necklace when she applied for its insurance policy and the placing of this amount in the policy by the company combine to become evidence of value as of the date of issuance of the said policy.

Furthermore, plaintiff's question as to whether an appraisal would be required had elicited a negative answer from the defendant.

Hence, the plaintiff's valuation clearly was accepted in lieu of an appraisal as evidence of value at the date of issuance.

■ This court is aware, however, that: "Opinion of any kind is a poor quality of evidence, and where admissible at all it is only so because it is the best that is available. In all questions of competency on that subject there must be a sliding scale, the only standard of which is that the witness shall have such knowledge of the subject-matter as can be reasonably expected in view of the circumstances of the particular case." Whitekettle v. N. Y. Underwriters Ins. Co., 293 Pa. 385, 143 A. 129, 130.

■ If the policy was in fact an "open" one, even an appraisal would not have precluded the defendant company from denying the value of the item at a subsequent date. See Friel v. National Liberty Ins. Co. of America, D.C., 71 F.Supp. 761. Although the record does not disclose proof of value at the date of loss, it is apparent that this deficiency might have been cured by the plaintiff through expert testimony on the fluctuation market value.

During argument to sustain the jury's verdict, the plaintiff endeavored to support the jury's finding of value based upon the testimony of several expert witnesses (two of whom had appeared on behalf of the defendant and one on behalf of the plaintiff).

One expert witness on behalf of the defendant had testified that by an expendi-

ture of four hundred dollars the remaining pearls could be rebuilt into a necklace with a value of two thousand two hundred dollars. Another expert witness on behalf of the defendant had testified that with an expenditure of eight hundred dollars the rescued pearls could be rebuilt into a necklace with a value of three thousand dollars. Hence, the expert testimony of defendant's witnesses appraised the rescued pearls to be valued at one thousand eight hundred dollars and two thousand two hundred dollars.

The expert witness called on behalf of the plaintiff had testified that the 27 large center pearls of a matched pearl necklace would normally be worth two-thirds of the value of the entire necklace.

Since it had been revealed by the plaintiff's testimony that all of the large center pearls were missing, the application of the two-thirds formula to the appraisals of the remaining pearls by defendant's experts would result—it was argued by the plaintiff—in giving the original necklace a value of five thousand four hundred dollars and six thousand six hundred dollars respectively.

There is nothing in the evidence, however, applying the testimony of the plaintiff's expert to the original necklace since the witness's formula was not offered as an invariable rule and the witness had never seen the necklace when it was intact.

■ Under all the evidence, therefore, the plaintiff failed to establish value in accordance with the burden resting upon the plaintiff in the event that the contract of insurance were construed to be an "open" one.

■ Whether the policy is a "valued" one or whether it is an "open" one was the question reserved by the court, and the court has considered this question carefully and earnestly. A "valued" policy is one which places a valuation upon the underwritten property by way of liquidated damages for the purpose of avoiding a subsequent valuation of the property in case of loss. Lycoming Ins. Co. v.

Mitchell & Boyle, 48 Pa. 367; Universal Mutual Fire Ins. Co. v. Weiss, 106 Pa. 20; see also, Hill v. British & Foreign Marine Ins. Co., Ltd. 4 Pa.Dist. & Co. 9 (C. P. Phila. Co.). The court has been unable to discover a case in Pennsylvania interpreting a jewelry-fur floater, and has unearthed little on the subject of "valued" policies for guidance. The construction of the terms of an insurance contract is the duty of the court, and "In determining the meaning of * * * words we must remember that words having no fixed technical meaning should be taken in their natural and obvious sense; that a provision capable of two or more meanings should be construed most strongly against him whose undertaking it is; and that the circumstances surrounding the parties when the contract was made, and affecting the subject to which it relates, form a sort of context that may be resorted to in doubtful cases to aid in arriving at the meaning of the contract." Bole v. New Hampshire Fire Ins. Co., 159 Pa. 53, 56, 28 A. 205, 206. Guided by this standard, the court must determine whether the policy manifests the intention that it be a "valued" contract. See Couch, Cyc. of Ins. Law, (vol. 1, Sec. 70.)

The defendant, in support of his argument that there is no agreement anywhere in the policy as to value, points out that the words and figures "Insured Value —$5,000" appears in the portion of the policy entitled "Description of Articles Insured," and not in the portion of the policy relating to the obligations of the parties. The court finds this analysis to be inaccurate: The quoted words and figures appear in that portion of the policy entitled "Schedule of Articles Insured" and the schedule has been incorporated by reference into the part of the policy relating to the obligations of the parties. No effort is made by defendant to ascribe any technical meaning to the words "Insured Value." In fact, the defendant does not attempt to define the term in any way. Rather, it argues that the mere statement of amount written into the face of a policy does not make it a "valued" contract.

While this point may be conceded, the argument ignores the words under which the amount is stated, and begs the question whether "Insured Value" has any meaning. Moreover, it is questionable that the amount stated under the heading is meant merely as a statement of the amount of insurance; for the "amount of insurance" is indicated in figures in the upper left corner of the policy, and the "sum" of the insurance is written out in the contract provision reciting the consideration and the undertaking to insure.

■ Two meanings of "Insured Value" suggest themselves. The natural and obvious sense of the words, it appears, is the value at which the article is insured. No effort at construction is required to understand this interpretation of the phrase, and it is harmonious with the plain meaning of the language. Cf., Lee v. Hamilton Fire Ins. Co., 251 N.Y. 230, 167 N.E. 426, where the phrase "valued at" followed by an amount was held to create a "valued" policy. In the absence of a technical distinction, this court sees no difference between "value", "valued at", "valuation" or "insured value" when used in the same context.

It might be contended that a second meaning of "Insured Value" would be the value of the article up to which the company has argeed to provide indemnification; in other words, maximum value. The court, however, knows of no lexicon which defines "insured" as "maximum". Furthermore, there is an assumption implicit in this construction:—that, namely, commonly, a policy of insurance is a contract of limited indemnification—which leads to backward reasoning that again begs the question. The question is whether the words "Insured Value" alter the the validity of that assumption in this case. Therefore, the plain meaning of the words is the value at which the item has been insured, or the amount at which it has been valued for insurance purposes. If this interpretation is not clear, then the words are at best ambiguous, and the ambiguity will be resolved against the insurer.

■ A further examination of the policy, however, and of the circumstances surrounding the parties when the contract was made and affecting the subject matter, substantiates the conclusion that the policy is a "valued contract" of insurance. There is nowhere in the policy a limitation on the amount of recovery to actual cash value for the loss of a single insured article, or any provision setting forth any standard by which the amount of the loss is to be ascertained, or any provision indicating that proof should be offered as to such value in case of loss. Cf., Universal Ins. Co. v. Weiss, 106 Pa. 20; Waynesboro Mut. Fire Ins. Co. v. Creaton, 98 Pa. 451; Ulmer v. Phoenix Fire Ins. Co., 61 S.C. 459, 39 S.E. 712; Luce v. Springfield Fire & Marine Ins. Co., 15 Fed.Cas. p. 1071, Case No. 8,589. In fact, there is no provision in the policy describing any method of adjusting the loss. If the parties had agreed on the value of the loss, there would be no necessity for such a provision. No place in the policy is there a clear indication that the liability of the insurer, for the loss of a single insured article, shall not be more but may be less than the amount stated, by the use of such a term as "not exceeding". Such a phrase, in a policy of insurance, "denotes that uncertainty of amount which is the chief characteristic distinguishing an "open" from a "valued" policy. Stuyvesant Ins. Co. v. Jacksonville Oil Mill, 6 Cir., 10 F.2d 54, 55; National Union Fire Ins. Co. of Pittsburgh, Pa. v. California Cotton Credit Corp., 9 Cir., 76 F.2d 279, 287. There is nowhere in the policy a provision giving the insurance company an option to replace a single lost insured article or in any way limiting its liability to the cost of replacing. Indeed, where the insured property is a piece of jewelry of unique utility, it is unlikely that the parties would consider such an option practicable. With property of this nature involved, it is entirely reasonable to suppose that the parties intended to avoid disputes over the very difficult question of value, in the event of loss. Thus, viewing the matter as a whole, the court holds that the parties intended

to place a value on the property and on the risk of actual total loss.

It must be stated that the reasoning employed to reach the result that the parties have agreed upon a valuation of the whole necklace in case of an actual total loss does not compel the conclusion that the valuation was meant to serve as the measure of liquidated damages in the event the necklace is not entirely lost and some value remains. In the first place, a policy so construed would be a gambling transaction rather than an insurance contract. In the second place, the terms of the policy specifically provide that all adjusted claims shall be "paid or made good" to the assured within 30 days. It is also provided that when any insured item consists of articles in a pair or set, the policy is not to pay more than the value of any particular part which may be lost, without reference to any special value which such article may have as part of a pair or set. These provisions indicate that the parties contemplated a different measure of damages in the event of a partial loss. Finally, the problem of proof, where the loss is not entire, is not the same as it is when the loss is entire. Where there is an agreed valuation of the insured property, proof of any partial loss is a simple and obvious matter, by measuring the value of the remaining part against the property as wholly valued. The measure of the value of the remaining part, however, depends on whether or not the part that remains can be utilized to advantage in restoring the insured property to substantially its former appearance and value. See Patriotic Ins. Co. v. Franciscus, 8 Cir., 55 F.2d 844; Grandview Inland Fruit Co. v. Hartford Fire. Ins. Co., 189 Wash. 590, 66 P.2d 827, 109 A.L.R. 1472. If the remaining pearls cannot be so utilized, the measure of damages would be, since, concededly, some value remains in the loose pearls, the difference between the five thousand dollars valuation and the value of the remaining pearls as loose pearls. If the remaining pearls could be used in reconstruction, then the measure of damages would be the cost of effecting a restoration, or the difference between the five thousand dollars evaluation and the value of the remaining pearls as part of the necklace.

The testimony at the trial was that the necklace could be rebuilt if the size of the missing pearls were known. Given the value of a necklace consisting of a certain number of pearls on a certain date, and a number of pearls remaining from that necklace, an expert might testify to the size and value of the missing pearls and the cost necessary to restore the necklace substantially to its former appearance and value. From evidence of this nature, a jury could determine the nature of the loss and assess damages accordingly. The trial jury, however, determined that the necklace could not be rebuilt to its former appearance and value. That answer cannot be taken as valid if, as it is now held, the policy is a "valued" one. For with the valuation established, the evidence on reconstruction would necessarily differ from such evidence where valuation has not been established. The answer to the interrogatory propounded merely reflected the absence of testimony as to such valuation from the case, with the plaintiff being unable to present evidence on the size and value of the missing pearls and the defendant being unable to persuade the jury that the necklace could be reconstructed to an original value of three thousand dollars. Upon a new trial, the parties will be able to try the issue of damages properly, and accordingly, a new trial will be ordered.