William L. HUTH, Plaintiff-Appellant,

v.

GENERAL ACCIDENT & LIFE ASSURANCE CORPORATION, LTD., Defendant-Respondent.

No. 36076.

Missouri Court of Appeals, St. Louis District, Division Four.

April 13, 1976.

Gerritzen & Gerritzen (Ray A. Gerritzen), St. Louis, for plaintiff-appellant.

R. E. Keaney, St. Louis, for defendant-respondent.

SMITH, Chief Judge.

Plaintiff appeals from a judgment in his favor for $4480.00 on a three count petition. Count I sought to recover $15,232.82 upon an inland floater policy issued by defendant, covering a scheduled list of guns. Count II sought recovery of $4,808.00 upon a similar separate policy also covering guns. The difference between the two policies is that the Count I policy covered "shooting guns", while the Count II policy covered "collectors'" guns. Count III was for vexatious refusal to pay. The jury returned a verdict of $4,000.00 on Count I; $480.00 on Count II, and $1,948.00 on Count III. The trial court granted defendant's motion to set aside verdict and judgment on Count III and entered judgment for defendant on that Count.

Plaintiff's petition alleged that all of the scheduled guns had been stolen in a burgla-

ry. Defendant admitted the issuance of the policies, that plaintiff had made demand upon it and that it had refused to make payment. Defendant denied all other allegations of the petition and raised no affirmative defenses.

Plaintiff has asserted 20 grounds of error. At least six were not preserved for appellate review because not raised in plaintiff's motion for new trial. Most of the other points range from trivial to frivolous. We have received no help from plaintiff's brief in confronting the rather complicated issues upon which we conclude that the judgment must be reversed.

Plaintiff applied for the insurance involved here after reading an ad in a gun magazine. He supplied a complete listing of the guns to be insured, their description and an "amount of insurance" for each gun. The "shooting gun" list consisted of 47 guns and assorted subsidiary equipment, having a total "amount of insurance" of $15,232.82. Plaintiff said he obtained the "amount of insurance" for each gun by consulting a gun digest pursuant to instructions from defendant's agent. The "collector" gun schedule consisted of 16 guns with various values and a total "amount of insurance" of $4,808.00. These schedules were attachments to the respective policies. The "shooting gun" policy had a premium of $152.32, indicated on the policy as "1%" of the insured amount. The "collector" policy had a premium amount of $15, stated on the policy as a rate of ".30".

The original "collectors" policy was issued April 29, 1970 for a period of one year commencing April 22, 1970. The "Shooting" gun policy was issued August 25, 1970, for one year commencing August 12, 1970. The policies as issued each consisted of two forms. The basic form in each case was a standard inland floater policy. As an attachment to that form, was a specific Gun Floater Form.

The two basic policies were virtually identical and the special form attachments were in all pertinent provisions identical. Because we find that the attachments made substantial changes in the nature of the basic policies we set out the respective pertinent portions of the basic policy and the attachment:

Basic policy:

"In consideration of the stipulations herein named and of the premium above specified the Company does insure the above named Insured . . . to an amount not exceeding the amount(s) specified, on property described below or in endorsement(s) attached.

SCHEDULE

| Item No. | Description of Articles | Amount of Insurance |
|---|---|---|

SEE SCHEDULE ATTACHED"

Attachment:

"2.     PROPERTY INSURED

This policy insures property of the Insured as described or scheduled herein.

| Description | Amount of Insurance |
|---|---|

SEE SCHEDULE ATTACHED

"3. This Policy Insures Against

All risks of direct physical loss of or damage to the property covered except as provided elsewhere in this policy."

Basic Policy:

"4. Valuation. The Company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost to repair or replace the

same with material of like kind and quality."

Attachment:

"5. This Company shall be liable for the full repair or replacement cost of the property insured without deduction for depreciation but in no event to exceed the amount of insurance applying thereto.

"7. All clauses, conditions and warranties in the printed portions of this policy in conflict with the terms of this special form are waived."

The last provision makes it apparent that in determining the meaning of the policies the attachments, if different from the basic policy, control.

On October 11, 1970, a burglary occurred at the home of plaintiff. Plaintiff testified that all 63 guns were stolen as well as the subsidiary equipment. Defendant offered no evidence to refute plaintiff's evidence of the fact of the burglary or the theft of the guns. It did introduce evidence intended to cast doubt upon whether plaintiff owned the number of guns he had insured.

Following the submission of proofs of loss and a lengthy investigation by the insurance company, the company rejected "the proofs as unsatisfactory." No further explanation was given. The guns and values listed on the proofs were identical to the schedules attached to the policy.

During the course of trial and over the continuing objection of plaintiff, testimony was introduced of the original purchase price of the guns or of their actual value. This evidence was admitted, ostensibly, only in defense of Count III, the vexatious refusal to pay count. We find the admission of such evidence erroneous and remand for new trial.

We note at the onset that defendant did not reject plaintiff's claim on the basis of fraud or misrepresentation. Nor did defendant assert such grounds as affirmative defenses. See Rule 55.08. The question then becomes whether the evidence was relevant to any of the pleaded issues before the jury.

■ Defendant contends that this was not a "valued policy" under the Missouri statute (RSMo. 379.160, 1969) because the loss was not a "fire loss." It therefore contends that such evidence was admissible (1) in justification of defendant's refusal to pay, (2) as evidence to refute plaintiff's proof of value and (3) to refute plaintiff's evidence of ownership of all the guns. The law of Missouri is not clear on whether this policy was a "valued" one under the statute. Fire policies covering personal property are "valued" by the statute. See *Duckworth v. United States Fidelity and Guaranty Co.*, 452 S.W.2d 280 (Mo.App.1970). The statute provides: ". . . that in all suits brought upon *policies of insurance against loss or damage by fire . . .* the defendant shall not be permitted to deny that the *property insured thereby* was worth at the time of the issuing of the policy the full amount insured therein on said property covering both real and personal property; . . ." (Emphasis supplied).

While we have found no case in this state which squarely rules that this provision applies to a policy providing fire coverage where the loss is other than by fire, the statutory language would warrant that conclusion. The policy here was one which covered against loss by fire, as well as any other form of loss. It is certainly arguable that the words "against loss or damage by fire" modifies "policies of insurance" rather than "suits brought," particularly when the later words "property insured thereby" are considered. And, there is a certain logical inconsistency in contending that the same property covered by the same policy has a fixed value if totally destroyed by fire and a different value if totally destroyed by wind or lost by burglary. See *Fireman's Fund Ins. Co. v. Vermes Credit Jewelry, Inc.*, 185 F.2d 142 (8 Cir. 1950); *Newcomer v. Standard Fire Insurance Company*, 165 F.Supp. 672 (E.D.Mo.1958).

■ But, we need not resolve this question of statutory interpretation for we find that the policies themselves are determinative of the amount plaintiff may re-

cover. An insurance policy is a contract and, as with any contract, we must look to the intent of the parties as expressed in that contract. Valued policies are not created alone by statute. They can also be created by contract.

"In a valued policy the value of the subject matter is agreed upon beforehand. If there is anything in the policy which clearly indicates an intention on the part of the insurer to value the risk and loss, in whatever words expressed, the policy is valued." *American Ins. Co. v. Gentile Bros. Co.*, 109 F.2d 732 (5 Cir. 1940) l. c. 735, cert. den. 310 U.S. 633, 60 S.Ct. 1075, 84 L.Ed. 1403.

■ We find several indications of intention to value the risk here. First: the scheduling of the items covered with an "amount of insurance" listed for each. The sum of the parts is exactly equal to the total insurance provided on the face of the policy. The policies do not simply provide a grand total of indemnity against which a loss for actual value of any of the items covered could be sought, but a specified limited amount for each weapon. We are confident that neither party would contend that a loss of less than all the insured guns would allow a recovery up to the face amount of the policy upon a showing that the actual cash value exceeded the scheduled amount for the guns lost. See *Ball v. Aetna Casualty & Surety Co.*, 58 F.R.D. 362 (E.D.Ky.1973). Second: the premium charged is based upon a percentage of the total insurance provided. This has been held to be indicative of a valued policy. See *Ball v. Aetna Casualty & Surety Co., supra; American Ins. Co. v. Gentile Bros. Co., supra; Palatine Ins. Co. v. E. K. Hardison Seed Co.*, 42 Tenn.App. 388, 303 S.W.2d 742 (1957). Third: the use of the term "amount of insurance" listed in the schedule indicates a specific value. Terms such as "insured value" have been equated to language such as "valued at" and are not equivalent to the term "maximum value" found in open policies. See *Gerhard v. Boston Ins. Co.*, 99 F.Supp. 247 (D.C.Pa.1951). Fourth: the insuring clause of the attachment (which supersedes the basic policy)

deletes the reference in the basic policy "to an amount not exceeding the amount(s) specified." The attachment reads: "This policy insures property of the Insured as described or scheduled below" thereby referring to the dollar amounts set forth in the schedule. Fifth: the obligation of the insurer under the attachment is to make it "liable for the full repair and replacement cost of the property insured without deduction for depreciation but in no event to exceed the amount of insurance applying thereto." The provision of the attachment deletes any reference to actual cash value referred to in the basic policy and indicates to us that the company has agreed to pay the full amount of the insured value of the guns or the replacement cost whichever is less. Such an undertaking is not inconsistent with the nature of the property insured. Guns, whether collector's or shooting, are frequently unique items, sometimes specially crafted or modified and difficult to duplicate. They do not lend themselves to valuation in the same sense that other species of property do. This is apparent from the use of a special gun form which varies considerably from the basic inland floater policy. If the guns are capable of repair or in this case replacement, the insurance company may invoke that option, otherwise it agrees to pay the insured the amount the insurance company has agreed is the value and for which it has charged a premium.

■ This being the nature of the contract of insurance, purchase price or market value was of no relevance for any purpose in the case. Under these policies the results of the insurance company investigations of market value or purchase price could furnish no basis for its refusal to pay nor serve to reduce the damages on Counts I or II. The record contains no evidence that the company offered to replace the guns or made any tender of replacement cost. Its denial of liability was not based upon such a ground, nor was its defense so oriented. Nor was market value or purchase price relevant to plaintiff's ownership of the property. Such evidence was so remote as to that fact, and so prejudicial on the

amount of loss, that testimony in this regard should not have been permitted. The admission of the evidence was error and prejudicial and allowed the defendant to contest a valuation to which it had agreed and by which it was bound. *Bergerson v. General Ins. Co. of America of Seattle, Wash.,* 232 Mo.App. 549, 105 S.W.2d 1015 (1937); *Gamel v. The Continental Insurance Company,* 463 S.W.2d 590 (Mo.App.1971).

The Court's action as to Count III was based upon the fact that the verdicts on Count I and II were substantially less than plaintiff claimed was due. Whether those verdicts would have been for less than that amount in the absence of the erroneously admitted evidence we cannot speculate.

Judgment reversed on all three counts and cause is remanded for new trial on all counts.

ALDEN A. STOCKARD and NORWIN D. HOUSER, Special Judges, concur.