Jim **CLARK**, Plaintiff,

v.

**AETNA CASUALTY & SURETY COMPANY**, Defendant.

Civ. A. No. E82–0073(L).

United States District Court, S.D. Mississippi, E.D.

Feb. 11, 1985.

Laurel Weir, Weir & Booker, Philadelphia, Miss., Orma R. Smith, Smith, Ross & Trapp, Corinth, Miss., for plaintiff.

Richard T. Lawrence, Watkins & Eager, Jackson, Miss., for defendant.

## MEMORANDUM OPINION

TOM S. LEE, District Judge.

Plaintiff, Jim Clark, initiated this suit when the defendant, Aetna Casualty and Surety Company (Aetna), refused to pay his claim under a policy of insurance issued by the defendant and covering certain farm equipment belonging to the plaintiff. The defendant argues that the policy was voided because of material misrepresentations made by the plaintiff.[1] The parties have submitted evidence and testimony at a trial of this case before this court.

On June 22, 1981, defendant issued a policy of insurance to plaintiff. The declaration page of the policy lists seventeen pieces of farm equipment and an amount of insurance for each item, totaling $38,470.00. The premium charged was $.80 per hundred dollars, or $308.00.

On August 22, 1981, a fire completely destroyed a shed owned by plaintiff's stepfather which contained all of the insured equipment. The plaintiff reported the loss to his insurance agent the next day, and on August 25, Roger Riddick, Senior Claims Representative for the defendant, arrived to inspect the scene. Plaintiff did not give a statement at that time because his child was visiting him and because he did not have his records together.

Riddick conducted a telephone interview with the plaintiff on August 27 at which time plaintiff again stated that he had to find his records but never asked Riddick to postpone the interview. Riddick questioned the plaintiff regarding his acquisition of the equipment, and plaintiff stated that he could not recall the names of the sellers of many of the items. Clark said that he purchased the single axle trailer from a man in Arkansas whose name he had forgotten and that he did not remember from whom he had bought the hay baling equipment in March 1981. Plaintiff further told Riddick that an appraisal by an employee of Mooney Tractor Company had been the basis for the figures in the policy. After the telephone interview, Clark submitted bills of sales that he represented to be legitimate. According to the bills of sale, he bought most of the property from local friends and family members. The bills of sale indicate that he bought the single axle trailer from his stepfather, although he had earlier stated that he had purchased it from a man in Arkansas. The bills of sale also show that he bought the hay baling equipment from Ovett Gipson for whom he was working at the time. This bill of sale was marked "duplicate" and was completed and signed by Gipson in black ink to show that the plaintiff paid $16,000.00 for several pieces of equipment. The "1" in $16,000.00, however, is in blue ink. At the trial, plaintiff explained that he paid Gipson $10,000.00 in cash and signed a note for $6,000.00. Billy Irons testified that he did not remember if the prices were entered on the bill of sale signed by him, and Okla Bozeman stated that no price was listed on the bill of sale that he signed.

Riddick talked with a representative of Mooney Tractor Company, who said that the plaintiff first requested an appraisal following the fire. Based on the policy description of the equipment, the representative estimated the replacement cost to be $15,607.00. Riddick also contacted Pedigo Equipment Company to obtain values of the equipment from the Official Guide to Tractor and Farm Equipment. Pedigo's es-

---

1. The misrepresentation clause of the policy provides:

"This entire policy shall be void if, whether before or after a loss, the Insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Insured therein, or in case of any fraud or false swearing by the Insured relating thereto."

timate was $17,137.00.[2] Clark advised Riddick that he had an appraisal from Saxon Motor Supply in excess of $28,000.00 and offered to settle for that amount. Mark Saxon of Saxon Motor Supply told Riddick that the estimate of $28,000.00 was based on new and used replacement equipment depending on availability. Saxon's estimate of maximum or near maximum cash value of the equipment which he gave to Riddick was $20,020.00. Riddick's offer to settle the case for $20,020.00 was refused by the plaintiff, who then offered to settle for $26,000.00.

After Riddick had offered to settle the claim, a deputy state fire marshal informed him that the bill of sale submitted by Billy Irons was not an original and that Irons had not sold any equipment to the plaintiff.[3] Riddick asked the plaintiff about the invoices and Clark again stated that they were legitimate. Further investigation revealed that the bill of sale signed by Okla Bozeman was also not legitimate, as the listed price exceeded the actual sale price by nearly $5,000.00.

On December 11, 1981, defendant wrote plaintiff of its intent to exercise its right under the policy to take the plaintiff's statement under oath. In his statement given on December 29, 1981, plaintiff said that he had secured the bills of sale following the fire, which had destroyed all of his records except his insurance policy. Clark further stated that his income tax return for 1981 would show profits of $5000–$6000 from selling cattle, $3500–$3800 from hauling hay and $4000–$5000 from hauling pulpwood during the year. The plaintiff's federal income tax return for that year, however, reflects no income from hauling hay and pulpwood and a sub-

stantial loss in his cattle farming operations.

The plaintiff contends that the policy issued to him by Aetna is a valued policy and, therefore, Aetna must pay the amount shown on the declaration page, $38,470.00. Furthermore, according to the plaintiff, under a valued policy, statements concerning the value of the property are not material and, consequently, the policy is not voided under the material misrepresentation clause. In *American Insurance Company v. Gentile Brothers Companies*, 109 F.2d 732, 735 (5th Cir.1940), the Fifth Circuit stated: "If there is anything in the policy which clearly indicates an intention on the part of the insurer to value the risk and loss, in whatever words expressed, the policy is valued." According to the plaintiff, the assignment of values to the insured items and the calculation of premiums as a percentage of the claimed value indicates a valued policy. The defendant argues that its liability is limited to the actual cash value of the equipment at the time of the loss pursuant to the policy which states in part:

"The Company shall not be liable beyond the cash value of the property at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost to repair or replace the same with material of like kind and quality.

In *Springfield Crusher, Inc. v. Transcontinental Insurance Company*, 372 F.2d 125 (3rd Cir.1967), the court found that a policy with an identical limitation of liability clause was a conventional open policy and not a valued policy, since it required

---

**2.** Riddick's testimony with reference to his communications with Pedigo, Mooney Tractor Company and Mark Saxon was admissible only on the issue of defendant's intent with regard to the question of punitive damages and was not admissible as to the value of the insured property.

**3.** At trial, Billy Irons, a neighbor and friend of Clark, after initially testifying on direct examination that he had not sold Clark any of the

property described on the bill of sale signed by him, equivocated on this issue on cross examination by the plaintiff. The defendant then sought introduction of a prior statement made by Irons and the court reserved ruling on plaintiff's objection. The court finds that the statement is admissible and overrules the objection of the plaintiff.

proof of the actual cash value of the insured property at the time of the loss. *Id.* at 127. The *Springfield* court, however, made no mention of whether premiums were based on a percentage of the amount of insurance obtained. In *Ball v. Aetna Casualty and Surety Company*, 58 F.R.D. 362 (E.D.Ky.1973), the plaintiff moved for summary judgment on the basis that the policy was a valued policy. The court determined that several aspects of the contract indicated a valued policy, but

> "[t]hese factors, however, are not conclusive in the absence of unambiguous policy terms reflecting a 'valued' policy. The appraisal and incorporation of a schedule does not necessarily indicate a 'valued' policy, since there are a number of other reasons why the insurer would want such information. There has been no allegation in the case at bar that the premiums were based directly upon the appraised values, as was the case in *American Insurance Company* [109 F.2d 732 (5th Cir.1940)].

*Id.* at 364.

Although the court apparently found the fact that premiums were not based on the appraised values to be influential, that fact alone was not determinative.

In *Huth v. General Accident and Life Assurance Corporation*, 536 S.W.2d 177 (Mo.1976), the court held that a policy with premiums based on the appraised value was a valued policy. The policy in issue contained a limitation of liability clause identical to the one in the policy issued by Aetna to Clark. The *Huth* policy also, however, included an attachment which read: "This Company shall be liable for the full repair or replacement cost of the property insured without deduction for depreciation but in no event to exceed the amount of insurance applying thereto." The court stated: "The provision of the attachment deletes any reference to actual cash value referred to in the basic policy and indicates to us that the company has agreed to pay the full amount of the insured value of the guns or the replacement cost whichever is less." Accordingly, the *Huth* case, because of the differing policy language, is not conclusive.

▉ This court finds that the policy issued by Aetna to Clark was a conventional open policy with Aetna's liability being limited to the actual cash value of the insured equipment. The calculation of premiums as a percentage of the amount of insurance on each item is a factor to be considered but is not determinative, particularly when the policy expressly limits the insurer's liability to the actual cash value of the property at the time of loss. Therefore, plaintiff's claims that Aetna was required to pay the total amount of insurance, $38,470.00, and that statements regarding the actual cash value of the equipment are not material are not well taken.

In *Southern Guaranty Insurance Company v. Dean*, 172 So.2d 553 (Miss.1965), Southern Guaranty sought to establish that an insurance policy was voided by the insured's failure to cooperate in the company's investigation of a fire loss. The court stated:

> "It is well established that such clauses in fire insurance policies are reasonable and valid, and are to be given a reasonable interpretation. If breached, the insurer would be deprived of a valuable right for which it contracted. Moreover, in an examination of the insured, all of those matters are material which have a bearing on the insured and the loss. The insured is required to give the best information available."

*Id.* at 556.

In *Edmiston v. Schellenger*, 343 So.2d 465 (Miss.1977), the Mississippi Supreme Court held that an insurance policy was voided when the insured wilfully made material false statements or refused to answer material questions. *Id.* at 466.

▉ The Mississippi Supreme Court "takes a broad view of materiality" in this context. *Edmiston*, 343 So.2d at 466. In *Taylor v. Firemans Fund Insurance Company*, 306 So.2d 638 (Miss.1974), the insurer contended that the insured's refusal to answer certain questions following a fire loss voided the policy under the misrep-

resentation clause. The Mississippi Supreme Court held that questions regarding the insured's title to the property, the amount paid and the source of the purchase money were material. *Id.* at 644. In *Southern Guaranty*, 172 So.2d at 556, the Mississippi Supreme Court also held that questions pertaining to the financial condition of the insured business and its owners were material. It is clear, therefore, that the questions to which the insurer allegedly received false answers from Clark were material.

It is also apparent in this case that Clark made false statements in his taped telephone interview with Riddick and in his sworn statement in response to questions about material matters asked by the defendant. Clark told Riddick that he did not know the names of the people from whom he purchased several pieces of equipment and subsequently produced purportedly legitimate bills of sale signed by friends and family members. In his sworn statement, the plaintiff had continued to maintain that he had purchased two of the four pieces of equipment listed on the fraudulent bill of sale from Billy Irons, but, at trial, he finally admitted that he did not buy any of the items from Irons. Clark's testimony at the trial attempting to explain his alleged lapses of memory as an inability to recall names is simply not credible. Furthermore, in his sworn statement given at the end of the year, Clark stated that he would realize substantial profit from several ventures, while his income tax returns reflect either losses or a failure to report the alleged income. In the two years preceding the fire loss, the tax returns show a net income of approximately $5,000 to $10,000 per year. It is during this time that Clark allegedly expended over $30,000 in the purchase and repair of equipment. Although it is arguable that purchase money was available from funds other than reported income, the plaintiff has not substantiated any other source. Therefore, if the false material statements were willfully made, the policy must be voided.

In *Claxton v. Fidelity and Guaranty Fire Corporation*, 179 Miss. 556, 175 So. 210 (1937), the insured claimed that fire had destroyed a five year old piano valued at $500. The court determined that the insured had owned the piano for twenty years and it was worth only $25 to $50. The court stated: "One cannot escape the conviction that the false statements here were knowingly and willfully made, and therefore the intent to deceive will be implied." In *Edmiston*, 343 So.2d at 467, the court inferred the intent to deceive from the insured's admission at the trial that he knew the statements he made were false. Clark admitted at trial that he knew that the bills of sale he produced and represented to be legitimate were not originals and in fact were not signed by the true sellers. Therefore, this court must also conclude that Clark acted with an intent to deceive when he made the false material statements. The defendant properly considered the policy voided under the misrepresentation clause.

The plaintiff also seeks punitive damages, prejudgment interest and attorney's fees. This relief must, of course, be denied, and the court notes that the defendant acted in good faith in its efforts to settle the plaintiff's claim prior to learning of the misrepresentations made by Clark.

A separate judgment shall be submitted in accordance with the local rules.