Chavis v. State Farm Fire and Casualty Co.

———————

CECIL K. CHAVIS, AND WIFE VICKY L. CHAVIS v. STATE FARM FIRE AND
CASUALTY COMPANY

No. 8513SC809

(Filed 4 February 1986)

Insurance § 122— fire insurance—policy condition requiring production of records
    —condition precedent to claim

The trial court did not err by granting defendant's motion for a directed verdict at the close of the evidence in an action to recover under a fire insurance policy where plaintiffs failed to comply with a condition precedent for recovery under the policy by not producing copies of bank accounts and F.H.A. loan accounts and by refusing to sign an authorization permitting a representative of defendant to examine their records at banks and other lending institutions. Information about plaintiffs' financial condition was clearly relevant to defendant's arson defense and defendant therefore had the right to inspect the requested records. N.C.G.S. 58-176.

Judge PHILLIPS dissenting.

APPEAL by plaintiffs from Fountain, Judge. Judgment entered 20 March 1985 in Superior Court, COLUMBUS County. Heard in the Court of Appeals 13 January 1986.

The record on appeal establishes the following uncontroverted facts: Defendant issued to plaintiffs an insurance policy, insuring plaintiffs' home against loss by fire. The policy contained the following provisions:

> The insured, as often as may be reasonably required, shall . . . submit to examinations under oath by any person named by this Company, and subscribe the same; and as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this Company or its representative, and shall permit extracts and copies thereof to be made.
>
> . . .
>
> No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity; unless all the requirements of this policy shall have been complied with . . . .

Plaintiffs' home and its contents were destroyed by fire on 5 October 1981. Plaintiffs filed a timely claim under the insurance policy.

Plaintiffs filed suit seeking to recover $34,107.79 for the loss suffered as a result of the fire, alleging that defendant had refused to comply with plaintiffs' due demand for payment under the terms of the policy. Defendant filed an answer wherein it alleged that plaintiffs had failed to produce books of account and other records after adequate notice as required by the policy and that the fire was a result of arson.

At the close of all the evidence, the trial judge allowed defendant's motion for directed verdict and entered judgment for defendant, from which plaintiffs appealed.

*T. Craig Wright and Burns, Pope, Sessoms and Williamson, by William J. Williamson, for plaintiffs, appellants.*

*Anderson, Broadfoot, Anderson, Johnson & Anderson, by Henry L. Anderson, Jr., for defendant, appellee.*

HEDRICK, Chief Judge.

The sole question presented on appeal is whether the trial court erred in allowing defendant's motion for directed verdict at the close of the evidence. Plaintiffs contend that the issues as to whether they complied with the provision of the policy requiring the insured to produce books of account and other documents would be subject to a test of reasonableness, which would necessarily have to be determined by the jury. We disagree.

Plaintiffs' fire insurance policy is the "Standard Fire Insurance Policy for North Carolina" as provided by G.S. 58-176. The provisions of this policy, including the provisions that compliance with its terms is a condition precedent before the insured can establish a claim for relief, have been held by the Supreme Court to be valid and just to the insured and the insurer. *Zibelin v. Insurance Co.*, 229 N.C. 567, 50 S.E. 2d 290 (1948). Both the insured and the insurer are presumed to know the terms, provisions, and conditions of the policy, and are bound by them. *Midkiff v. Insurance Company*, 197 N.C. 139, 147 S.E. 812 (1929).

Neither plaintiffs nor defendant cite any authority from this jurisdiction dealing specifically with the provision requiring the insured to produce books of account and other records at the request of the insurance company. However, courts of other jurisdictions have held that similar provisions are valid and that the unexcused refusal to produce the required documents precludes recovery on the policy. *Pogo Holding Corp. v. New York Property Ins.*, 73 A.D. 2d 605, 422 N.Y.S. 2d 123 (1979); *Southern Guaranty Ins. Co. v. Dean*, 252 Miss. 69, 172 So. 2d 553 (1965); *Beasley v. Pacific Indemnity Co.*, 200 Cal. App. 2d 207, 19 Cal. Rptr. 299 (1962); *Georgian House of Interiors v. Glens Falls Ins. Co.*, 21 Wash. 2d 470, 151 P. 2d 598 (1944). The object of provisions requiring the insured to submit to an examination under oath is to enable the insurance company to obtain information to determine the extent of its obligation and to protect itself from false claims, *Claflin v. Commonwealth Ins. Co.*, 110 U.S. 81, 3 S.Ct. 507, 28 L.Ed. 76 (1884), and the provision requiring the production of documents is designed to serve the same purpose. *See Southern Guaranty Ins. Co. v. Dean*, 252 Miss. 69, 172 So. 2d 553 (1965).

While these provisions do not give the insurer license to harass plaintiff with aimless questions and demands for docu-

ments, questions asked and documents sought which relate to the validity of the insured's claim are material and relevant. *Happy Hank Co. v. Insurance Co.*, 286 A.D. 505, 145 N.Y.S. 2d 206 (1955), *modified*, 1 N.Y. 2d 534, 136 N.E. 2d 842, 154 N.Y.S. 2d 870 (1956). The financial condition of the insured is relevant to the arson defense in a suit upon a fire insurance policy. *Payne v. Nationwide Mutual Ins. Co.*, 456 So. 2d 34 (Ala. 1984); *Kisting v. Westchester Fire Insurance Company*, 416 F. 2d 967 (7th Cir. 1969).

Compliance with provisions of an insurance policy requiring the insured to produce documents "as often as may be reasonably required" at a "reasonable time and place" is a condition precedent to bringing suit where the insurer notifies the insured of the time and place for production. *Taubman v. Allied Fire Ins. Co. of Utica*, 160 F. 2d 157 (4th Cir. 1947). The "reasonable time and place" clause ordinarily means that a demand must be made within a reasonable period of time and that the location must be in the locality of the insured property. *Butler Candy Co. v. Springfield Fire and Marine Ins. Co.*, 296 Pa. 552, 146 A. 135 (1929).

In *Tire Co. v. Morefield*, 35 N.C. App. 385, 241 S.E. 2d 353 (1978), this Court said that "[a] condition precedent is a fact or event, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available." *Id.* at 387, 241 S.E. 2d at 355, citing *Cargill, Inc. v. Credit Assoc., Inc.*, 26 N.C. App. 720, 722-23, 217 S.E. 2d 105, 107 (1975). The burden is on plaintiff to offer evidence in support of all essential elements to establish his claim. *Tire Co. v. Morefield*, 35 N.C. App. 385, 241 S.E. 2d 353 (1978). The occurrence of a condition precedent is an essential element of plaintiff's case, and it is therefore incumbent upon plaintiff to offer proof of compliance with the terms of the contract. *Id.*

Plaintiffs, in the present case, have offered no evidence tending to show that they have complied with the terms of the insurance contract by producing the information requested. In fact, the evidence discloses that plaintiffs had steadfastly refused to comply with defendant's requests to produce copies of their bank and loan accounts. Pursuant to a letter written to plaintiffs' attorney on 25 November 1981, plaintiffs appeared at the court-

Chavis v. State Farm Fire and Casualty Co.

house in Elizabethtown, North Carolina for an examination under oath. Mr. Chavis testified at trial that although he had been specifically requested to produce copies of his bank accounts and F.H.A. loan accounts, he did not produce these documents at the examination. When the attorney for defendant, upon learning of their failure to supply the information requested, asked plaintiffs to execute an authorization permitting a representative of defendant to examine their records at banks and other lending institutions, they refused. Mr. Chavis testified that he refused to sign the release on the advice of his attorney and because he felt that his business and financial records were "none of their business."

Plaintiffs do not contend that the time or place for the production of these documents was unreasonable. Rather, they argue that there was an issue for the jury as to whether defendant could reasonably require them to produce these documents. Under the principles discussed above, information about plaintiffs' financial condition was clearly relevant to defendant's arson defense and defendant therefore had the right to inspect the requested records.

Thus, all the evidence at trial discloses plaintiffs' failure to comply with the terms of the contract and particularly with the condition precedent by failing to provide the requested financial information. The evidence discloses an insurmountable bar to plaintiffs' claim, and the trial court properly allowed defendant's motion for a directed verdict.

Affirmed.

Judge JOHNSON concurs.

Judge PHILLIPS dissents.

Judge PHILLIPS dissenting.

An insurance policy being but a special kind of contract, it is fundamental, of course, that an insured must comply with the terms of the policy before he can recover under it, and the validity of this rule is not questioned by plaintiffs' appeal. What is questioned is whether, as a matter of law, plaintiffs' policy required them to permit defendant to examine the records of every

banking and loan transaction that either of them had ever had. This question is not really addressed by the majority opinion, which is based on the tacit premise that the policy obligated plaintiffs to furnish any information requested that is relevant to any issue raised by the pleadings; a premise that the policy language does not support. And contrary to the implication in the opinion, plaintiffs' case was not dismissed because they refused to produce records that defendant needed in evaluating or defending the claim; it was dismissed because they refused to sign a grossly overbroad authorization that defendant obviously did not need and that plaintiffs had no obligation to sign.

Though defendant argued here that the dismissal is also based on plaintiffs' refusal to produce various papers requested by it other than those referred to in the refused authorization, this is not borne out by the record. That plaintiffs had no duty to produce any documents at all until defendant made a request is conceded, and the record plainly shows that the only request defendant made that was refused was the request to sign the disputed authorization. The only other request to examine documents that defendant made concerned plaintiffs' income tax returns and that request was complied with. The authorization that plaintiffs refused to sign was as follows:

AUTHORIZATION AND RELEASES OF
INFORMATION AND RECORDS

I, Cecil K. Chavis and Vickie Chavis, do hereby authorize any representative of all banks and/or any type of lending institution which I have done any business with to consult with and/or deliver to any representative of State Farm Fire and Casualty Company any and all records referred to or requested by any representative of State Farm Fire and Casualty Company.

This the 4th day of December, 1981.

The scope of this authorization is without parallel. It would enable the company to examine every financial statement and loan application that plaintiffs have ever made, every check they have ever written, and every bank deposit they have ever made. Nothing in the policy obligated plaintiffs to sign such an authorization and the dismissal of plaintiffs' case is clearly without foundation.

Chavis v. State Farm Fire and Casualty Co.

Plaintiffs' obligation to produce documents requested by defendant is stated in one sentence of the policy, as follows:

> The insured, as often as may be *reasonably required*, shall exhibit to any person designated by this Company all that remains of *any property herein described*, and submit to examinations under oath by any person named by this Company, and subscribe the same; and, as often as may be *reasonably required*, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this Company or its representative, and shall permit extracts and copies thereof to be made.

(Emphasis supplied.) This sentence is about the *insured property*, and it seems plain to me that the only papers it required plaintiffs to produce at defendant's request were the "books of account, bills, invoices and other vouchers" that pertain to the insured property. It did not require them to produce all other books of account, bills, invoices and vouchers that they happened to have access to. Nor did it require them to produce papers such as bank and loan company records, which are neither books of account, bills, invoices nor vouchers. "[B]ooks of account, bills, invoices and other vouchers" are documents which tend to show the ownership and cost of properties; which is why, no doubt, the General Assembly phrased the Standard Fire Policy as it did. Requiring that such documents be produced on request when properties covered by them are the subject of a fire insurance claim serves a necessary purpose and makes sense. But requiring insureds to permit insurance companies to examine personal papers that clearly have nothing to do with the insured property and that may only support one of the myriad defenses that can be asserted in such cases makes no sense whatever. Though fishing expeditions of that type can be indulged in through the discovery process, the General Assembly has not required insureds to acquiesce in such expeditions as a condition to enforcing their rights under the policy. If the General Assembly had intended to deprive insureds of their policy benefits if they did not furnish their companies all information requested that might be relevant to the case—which is utterly inconceivable—it would not have used the language that it did.

That plaintiffs' obligation to produce documents is quite limited by the policy terms was apparently recognized by the defendant at one time. In all events, when defendant scheduled plaintiffs' examinations under oath it directed them to bring to their examination only "a detailed inventory of the items claimed as well as *any bills, invoices, receipts and documents that they have to substantiate their loss.*" (Emphasis supplied.) The statement in the opinion indicating that plaintiff was "specifically requested to produce copies of his bank accounts and F.H.A. loan accounts" and that Chavis so testified is inaccurate. The only record basis for this statement is Chavis' negative answer to a leading question by defense counsel which incorrectly asserted as a fact that such a specific request had been made. While the meaning of Chavis' testimony on this point may be subject to argument, the meaning of defendant's letter specifying the papers plaintiffs were to bring to the examination is not. It is in the record, and it does not mention "bank or loan accounts" of any kind.

The record, as I view it, shows that plaintiffs not only met the policy conditions covering disclosure, but went beyond them. They submitted to examination under oath at the time and place defendant suggested. They answered questions not only about the insured property, but about their assets, debts, and earnings. They also answered questions about claims they had made against others and about claims and charges that had been made against them; and they authorized defendant to obtain copies of their state and federal tax returns for each of the preceding five years. The only thing they did not do that defendant requested of them was sign the authorization quoted above. Their refusal was entirely justified, as banking records are neither "books of account, bills, invoices and other vouchers," and the scope of the authorization was unreasonably broad in any event.