**UNITED STATES FIDELITY AND GUARANTY COMPANY, Plaintiff,**

v.

**Wallace W. CONAWAY, Defendant.**

**No. EC87–34–S–D.**

United States District Court,
N.D. Mississippi, E.D.

Dec. 11, 1987.

one of three available registration sites within their local supervisory districts.

Michael D. Greer, Mitchell, McNutt, Bush, Lagrone & Sams, Tupelo, Miss., for plaintiff.

J.B. Garretty, Corinth, Miss., for defendant.

## OPINION

SENTER, Chief Judge.

This cause comes before the court on motion by United States Fidelity and Guaranty Company (USF & G) for summary judgment. The court, being fully advised in the premises, finds the motion to be well taken and sustains said motion.

### FACTS

The following are alleged as the relevant facts in this cause.

On August 23 and 24, 1986, two fires occurred at the residence of Wallace W. Conaway. An investigator for USF & G examined the sites of the two fires on August 26, 1986, and determined that both fires were caused by accelerants being poured onto the floor and walls of the residence and ignited. Chemical analyses of sampled materials from the sites indicate that mineral spirits were used. USF & G began investigating for motive and opportunity.

The house was locked and the windows were barred on both occasions. Only Conaway and his father had keys to the residence. Conaway appeared at the scene shortly after both fires. There was no evidence of burglary or other break-in at the house other than that from where the fire department had to break in to fight both fires.

On August 27, 1986, Steve Jordan interviewed Conaway for USF & G. In that interview, Conaway stated that the house was his current residence. He also stated that he had placed the house on the market for one day three months before the fire but that the house was not currently on the market. As to the second fire, Conaway stated: "I think an arson, a sick, perverted one, not just one for trying to get money, I don't think anyone could be paid to do an act of that in full daylight."

Subsequent investigation by USF & G showed that Conaway had advertised the house for sale the entire month of July but had received no offers and that less than a month before the fire, he had discussed obtaining a rental insurance policy with his insurance agent.

On October 9, 1986, Conaway submitted a sworn statement in proof of his loss. The statement indicated that there was only one fire, that the cause of that fire was unknown, and that the house was used solely as a residence by Conaway.

On October 14, 1986, USF & G requested that Conaway sit for a deposition on October 21, 1986, and provide the following:

1. Any and all bank statements, savings account records, CDs or other financial records revealing your financial condition for the period of one year prior to the date of the fire, August 23, 1986, to date;

2. Any writings reflecting the indebtedness due on the house involved including copies of deeds of trust, promissory notes, mortgages, and schedule of payments due on them;

3. Copies of your personal and business federal income tax returns for 1983, 1984 and 1985;

4. Written evidence of purchase of the contents for which claim is made under the terms of the policy and any evidence of any indebtedness owed against such contents including financing statements,

security agreements, promissory notes, or the like;

5. Copies of any contracts for sale entered into by and between you and any realty company or person at any time listing the property at 908 Gloster Street, Corinth, Mississippi for sale;

6. All policies of insurance in existence insuring the residence issued within the last three years;

7. A list of your major financial obligations at the time of the fire (major being defined as over $100.00);

8. Any and all documents of whatsoever kind which in any way pertain to the divorce between you and your former spouse;

9. Any documentation of all assets of whatsoever kind you owned at the time of the fire, including but not limited to stocks, bonds, deeds, certificates of title, etc.;

10. Any other documentation of whatsoever kind which you have supporting claims you have made in your proof of loss;

11. All books, records or documents of whatsoever kind reflecting the financial condition of any business owned in whole or in part by you from six months prior to the fire until two months following the fire; and

12. All medical or drug bills incurred by you from six months prior to the fire until two months following the fire.

USF & G based its request on the "Conditions" provision of the Mississippi addendum to the policy of insurance which states:

In case of a loss to which this insurance may apply, you shall see that the following duties are performed:

d. as often as we reasonably require:

(1) exhibit the damaged property;

(2) provide us with records and documents we request and permit us to make copies; and

(3) submit to examination under oath and subscribe the same.

Conaway was deposed on October 21, 1986. He refused to produce any financial information whatsoever. His repeated assertion was that the information sought was personal, that the contractual provision requiring the production was unreasonable, and that he would provide only that information which was public record. The attorney for USF & G requested that Conaway sign a release permitting USF & G to obtain such financial information from third parties. Conaway refused.

On December 12, 1986, USF & G denied Conaway's claim. The letter denying the claim stated that USF & G had concluded that Conaway was the arsonist, that material misrepresentations had been made on the proof of loss and in the course of investigation, and that Conaway had failed to comply with the requirement of the policy for the production of documents.

On December 16, 1986, Conaway wrote a letter to USF & G protesting its conclusions and threatening suit. With this letter, Conaway included a copy of his 1985 personal income tax return and an unaudited financial statement. Conaway asserted that USF & G already possessed the financial data requested because of a surety bond it had written on him in 1986. Conaway's insurance agent had purchased such surety for Conaway, but that bond was with Western Surety Company. Western Surety Company is not affiliated with USF & G. The attorney for USF & G replied on January 6, 1987, and refused to reconsider, characterizing the documents produced as minimal and filed too late to be considered. Conaway hired counsel. On January 26, 1987, counsel for USF & G filed a declaratory judgment action with this court. On February 5, 1987, counsel for Conaway filed an action based on the insurance contract in the Circuit Court of Alcorn County. On March 3, 1987, the second action was removed to this court. The court has jurisdiction over both matters under 28 U.S.C. § 1332. USF & G seeks summary judgment in all claims to both actions on the grounds that Conaway's refusal to answer questions as to his income was a material breach of the insurance contract.

## LAW

This issue is before the court on motion for summary judgment. Fed.R.Civ.P. 56(c)

states that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." There is no dispute as to the facts of Conaway's refusal to answer questions about his financial status or to provide documentation either directly or indirectly through the signing of a release. Nor is there a dispute about Conaway's subsequent production of financial statement and tax return. The dispute is to the legal implications of these facts. Summary judgment may appropriately be considered in this cause.

The Supreme Court of Mississippi has ruled that where a policy requires production of documents in support of a claim, a refusal by the insured to produce for examination written documents which are pertinent and material to the insurance and loss is a bar to recovery under the policy. *Southern Guaranty Insurance Company v. Dean,* 252 Miss. 69, 172 So.2d 553, 556 (1965). "In an examination of the insured, all of those matters are *material* which have a bearing on the insurance and the loss. The insured is required to give the best information obtainable." *Id.* The court has ruled similarly with respect to refusal to answer questions to depositions. *Standard Ins. Co. v. Anderson,* 227 Miss. 397, 86 So.2d 298 (1956).

■ In this cause, the policy requires that Conaway provide USF & G with records and documents which it requests as often as USF & G may reasonably request them. Conaway contends that the request for documents was unreasonable. Only one demand for such documents was made. USF & G requested a release to obtain financial information on two occasions. Conaway was questioned twice. The documents demanded are substantially the same as those requested in *Dean. See* 172 So.2d at 556–57. The question is what the clause of the contract meant by "reasonably request." The interpretation of a writing is a matter of law for the court. *Cunningham and Company, Inc. v. Con-*

*solidated Realty Management, Inc.,* 803 F.2d 840 (5th Cir.1986). The Supreme Court of Mississippi held in *Dean* that inquiries into the financial status of persons making claims under a fire insurance policy are permissible and therefore "reasonable." A single request is not so frequent as to be unreasonably often.

■ Conaway also contends that the requirement for production cannot exceed that permitted under the Federal Rules of Civil Procedure. The issue *sub judice* is contractual. It is inherent in the nature of contracts that they create duties in parties which would not otherwise exist. Those courts which have considered similar contentions have rejected them. *See Williams v. American Home Assurance Co.,* 97 A.D.2d 707, 468 N.Y.S.2d 341 (1983).

■ Lastly, Conaway contends that his production of a copy of his return and an unaudited financial statement cured the breach. Although made prior to instigation of a declaratory judgment action by USF & G, the production was not made prior to the denial of the claim. Nor does such production constitute substantial compliance with the request given Conaway on October 14, 1986. Neither the 1985 tax return nor the financial statement prepared December 4, 1986, enabled USF & G to determine whether Conaway was facing a liquidity crisis in August, 1986. The information provided is only tangentially relevant to USF & G's efforts to determine whether Conaway had a motive for burning his residence.

The court concludes that Conaway's refusal to answer questions about his financial condition or provide documents about his finances was a material breach of the policy. Accordingly, USF & G is not liable to Conaway under the policy for either actual or punitive damages. Conaway's claims against USF & G will be dismissed with prejudice and costs will be awarded to USF & G. An appropriate order shall issue.